<u>NOT FOR PUBLICATION</u>

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| LUIS RIVERA, on behalf of himself and the class defined herein,<br><br>       Plaintiff,<br><br>v.<br><br>RALPH F. CASALE & ASSOCIATES, LLC<br><br>       Defendants. | Civ. No.  13-587 (KM)<br><br><u>**O P I N I O N**</u> |

*Appearances by:*

Ryan Leyland Gentile, Esq.
LAW OFFICES OF GUS MICHAEL FARINELLA PC
147 West 35th St. Suite 1008
New York, NY 10001

 *Attorney for Plaintiff*

Robert B. Hille, Esq.
MCELROY DEUTSCH MULVANEY & CARPENTER, LLP
1300 Mt. Kemble Avenue
P.O. Box 2075
Morristown, NJ 07962-2075

 *Attorney for Defendant*

<u>**DEBEVOISE, Senior District Judge**</u>

  This is a suit under the Fair Debt Collection Practices Act, 15 USC 1692 et seq. ("FDCPA") against a law firm engaged in debt collection.  Plaintiff Luis Rivera claims a debt collection letter circulated by Defendant Ralph F. Casale & Associates, LLC ("Casale") violates the FDCPA in that it does not provide the amount of debt and includes language which overshadows the debtor's right to dispute and validate the debt.  Mr. Rivera brings this action on

behalf of himself and those similarly situated. The Court is presented with Casale's joined motions to dismiss the FDCPA claims and to strike the class allegations. For the reasons set forth below, Casale's motions are denied.

## I.     BACKGROUND

### A. Factual History

Mr. Rivera received a letter from Casale dated August 28, 2012 which states that on or about February 18, 2005, Mr. Rivera "became indebted for material and supplies and services rendered by ARGENT MORTGAGE COMPANY, LLC in the amount of $333,000.00 which has not been paid." (Id.)

The body of the one-page and single-sided collection letter further provides:

> This is to advise you that unless you notify this office within thirty (30) days of receipt of this letter that you dispute the validity of this amount due, or any portion thereof, we shall assume this debt to be valid.
> You are further advised that if you notify this office, in writing, within thirty (30) days of receipt of this letter that you believe that this amount due, or any portion thereof, is in dispute, we will provide you with verification of this debt.
> Be further advised that if you make a written request within thirty (30) days of receipt of this letter we will provide you with the name and address of your original creditor, if said creditor was other than Deutsche Bank National Trust Company, as Indenture Trustee for Argent Mortgage Loan Trust 2005-WI, Asset-Backed Notes, Series 2005-WI.
> This firm has been retained by Deutsche Bank National Trust Company, as Indenture Trustee for Argent Mortgage Loan Trust 2005-WI, Asset-Backed Notes, Series 2005-WI and its mortgage servicer, AMERICAN HOME MORTGAGE SERVICING INC. to collect a debt due from you. Any information or statements provided by you to this office can and will be used for that purpose.
> Notwithstanding any implications to the contrary, suit may be brought against you within the thirty (30) day period mentioned above for the full amount due, together with interest, court costs

> and attorneys fees; it should be noted that this matter will not
> necessarily be held in abeyance during this thirty (30) day period.
> YOU ARE HEREBY ADVISED PURUSANT TO THE
> FAIR DEBT COLLECTION PRACTICES ACT THAT THIS
> FIRM IS DEEMED TO BE A DEBT COLLECTOR
> ATTEMPTING TO COLLECT A DEBT.  ANY INFORMATION
> OBTAINED WILL BE USED FOR THAT PURPOSE.
>
> (Id.)

Mr. Rivera alleges that Casale sent more than fifty similar letters to others during the twelve month period prior to initiating this suit.

### B. Procedural History

On January 31, 2013, Mr. Rivera filed a complaint alleging that Casale violated the FDCPA Sections 1692 (Congressional findings and declaration of purpose), 1692e (false and misleading misrepresentations), and 1692g (validation of debts).  First, Mr. Rivera argues that the collection letter did not state the amount of the current debt due as required by the FDCPA, and that the provision of the original 2005 debt was not sufficient. Second, Mr. Rivera claims that the collection letter was inconsistent with and/or overshadowed his right to dispute and request verification of the debt as required by the FDCPA.  In particular, Mr. Rivera submits that the letter contained false, misleading, and deceptive statements regarding his ability to sue within a thirty-day period because the letter purportedly cautioned that the period trumped his ability to sue, and that there was no obligation to hold the matter in abeyance during that period.  Based on this illegal conduct, Mr. Rivera brings suit for statutory damages pursuant to Section 1692k.

Mr. Rivera brings this action on behalf of himself and on behalf of a class of similarly situated individuals pursuant to Fed. R. C.P. 23(a) and (b) (3).  Mr. Rivera proposes that the class consists:

> a)  of all individuals with a New Jersey address who have incurred
> a consumer debt and had a letter sent to them in substantially the

3

> same form as Exhibit A where the letter did not provide the correct balance owed as of the date of the letter, b) was inconsistent with and/or overshadowed plaintiff's right to dispute the debt and request verification of the debt[,] c) on or after a date one year prior to the filing of this action.
>
> (Compl. ¶ 24.)

On information and belief, Mr. Rivera submits that there are at least forty members of the class.

On May 6, 2013, Casale filed a motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(B)(6). First, Casale argues that it was not required to state the amount of the debt owed in the initial communication to Mr. Rivera under Section 1692g(a) as a matter of law. Second, Casale argues that the complaint should be dismissed because the "least sophisticated consumer" would have read the entire letter and would have reasonably known of his right to dispute the validity of the debt or seek verification of the debt within thirty days. Third, Casale argues that the class allegations should be stricken for failure to satisfy Rule 23(a) and Rule 23(b)(3).

On May 20, 2013, an opposition brief was filed. On May 28, 2013, a reply brief was filed. The joined motions are considered on the papers.

## II.   ANALYSIS

### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint for failure to state a claim upon which relief can be granted. When considering a motion under Rule 12(b)(6), the court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). The court's inquiry "is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims." In re Rockefeller Ctr. Prop., Inc., 311 F.3d 198, 215 (3d Cir. 2002).

The Supreme Court recently clarified the standard for a motion to dismiss under Rule 12(b)(6) in two cases: Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). The decisions in those cases abrogated the rule established in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief."  In contrast, the Court in Twombly held that "[f]actual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. at 545. The assertions in the complaint must be enough to "state a claim to relief that is plausible on its face," id. at 570, meaning that the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the conduct alleged." Iqbal, 129 S. Ct. at 1949; see also Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008) (in order to survive a motion to dismiss, the factual allegations in a complaint must "raise a reasonable expectation that discovery will reveal evidence of the necessary element," thereby justifying the advancement of "the case beyond the pleadings to the next stage of litigation.").

When assessing the sufficiency of a complaint, the court must distinguish factual contentions — which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted — from "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 129 S. Ct. at 1949. Although for the purposes of a motion to dismiss the court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 1950. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

5

With respect to a Motion to Strike, Federal Rule of Civil Procedure 12(f) provides that "[t]he Court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Courts have broad discretion in resolving motions to strike. Hanover Ins. Co. v. Ryan, 619 F.Supp.2d 127, 132 (E.D. Pa. 2007) (citing Cipollone v. Liggett Group, Inc., 789 F.2d 181, 185 (3d. Cir. 1986)). "The purpose of a motion to strike is to simplify the pleadings and save time and expense by excising from a plaintiff's complaint any redundant, immaterial, impertinent, or scandalous matter which will not have any possible bearing on the outcome of the litigation." Receivables Purchasing Co., Inc. v. Engineering and Professional Services, Inc., 2010 U.S. Dist. LEXIS 89334, *2 (D.N.J. Aug. 30, 2010) (quoting Garlanger v. Verbeke, 223 F.Supp.2d 596, 609 (D.N.J. 2002)).

However, "motions to strike are usually 'viewed with disfavor' and will generally 'be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues.'" Id. The striking of a pleading is considered a "drastic remedy to be resorted to only when required for the purposes of justice." Eisai Co. v. Teva Pharmaceuticals, USA, Inc., 629 F.Supp.2d 416, 425 (D.N.J. 2009) (quoting Tonka Corp. v. Rose Art Indus., Inc., 836 F.Supp. 200, 217 (D.N.J. 1993)).  "[O]nly allegations that are so unrelated to plaintiffs' claims as to be unworthy of any consideration should be stricken." Johnson v. Anhorn, 334 F.Supp.2d 802, 809 (E.D. Pa. 2004).

The Court first considers the motion to dismiss the FDCPA claims, and then the motion to strike the class allegations.

    **B. Discussion**

The purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 USCS 1692(e).  The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements in connection with the collection of a debt.  The FDCPA therefore requires debt collectors to provide debtors with certain information, and provides for relief by way of statutory damages regardless of proof of actual damage.  As remedial legislation, the FDCPA is to be construed broadly to give full effect to its purpose.  See Caprio v. Healthcare Revenue Recovery Group, LLC, 709 F.3d 142, 148 (3d Cir. 2013).

1. *The Section 1692g(a) claim*

15 USC 1692g(a)(1) requires a debt collector to send a consumer a written notice containing "the amount of the debt" either in the initial communication with the consumer or within five days after the initial communication.  Additionally, paragraphs 3 through 5 of Section 1692g(a) contain the statutorily-mandated validation notice, which is comprised of statements that inform the consumer of his or her right to dispute the debt and obtain verification of the debt within thirty days.  Section 1692(g)(a) provides in full:

> Notice of debt; contents. Within five days after the initial
> communication with a consumer in connection with the collection
> of any debt, a debt collector shall, unless the following information
> is contained in the initial communication or the consumer has paid
> the debt, send the consumer a written notice containing--
>   (1) the amount of the debt;
>   (2) the name of the creditor to whom the debt is owed;
>   (3) a statement that unless the consumer, within thirty days after
> receipt of the notice, disputes the validity of the debt, or any
> portion thereof, the debt will be assumed to be valid by the debt
> collector;

>    (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>    (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.
>
> 15 USC 1692(g)(a).

Here, Mr. Rivera argues that the collection letter which he received violates Section 1692g because the "amount of debt" listed therein was that of the February 18, 2005 rather than the August 28, 2012 figure. Because this initial communication, nor a communication within five days after it, included the latter figure, Mr. Rivera argues that the FDCPA was violated. In turn, Casale contends that it was not required to state the amount of the debt in the collection letter because the statute authorizes its provision within five days after the initial communication. This argument is shaky, however, because no evidence has been submitted to suggest that there was a second communication that provided further notice of the debt amount.

The Seventh Circuit Court of Appeals examined a similar question where a collection letter provided the unpaid principal balance originally due, rather than the total debt due. See Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, LLC, 214 F.3d 872 (7th Cir. 2000). Therein, Chief Judge Posner reasoned that "[t]he unpaid principal balance is not the debt; it is only a part of the debt; the Act requires statement of the debt. . . It is no excuse that it was 'impossible' for the Defendants to comply when as in this case the amount of the debt changes daily. What would or might be impossible for the Defendants to do would be to determine what the amount of the debt might be at some future date if for example the interest rate in the loan agreement was variable. What they certainly could do was to state the total amount due –

interest and other charges as well as principal – on the date the dunning letter was sent. We think the statute required this." Id.at 875.

Similarly here, the collection letter only provides the original debt owed to the mortgage company in 2005, rather than the total debt due as of circulation of the letter over seven years later. The "unpaid principal balance is not the debt; it is only a part of the debt." Id. Indeed, the purpose of this section is for the debtor to receive notice of the debt and effective explanation of his or her rights to contest it. See Caprio, 709 F.3d at 148 (relying on Graziano v. Harrison, 950 F.2d 107, 111 (3d Cir. 1991)). Mr. Rivera was not provided with notice of the debt owed such that he could effectively dispute the claim because the collection letter did not provide the total amount due as of the date of the letter, including interest and other relevant charges in addition to the principal. Nor was the actual debt provided within a subsequent communication within the statutorily-authorized five-day window. Therefore, Casale's motion to dismiss the Section 1692g claim is denied as a matter of law.

2. *The Section 1692e claim*

Section 1692e mandates that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." Mr. Rivera argues that the collection letter made false, deceptive, or misleading representations because the statutorily-mandated validation notice was overshadowed by or inconsistent with the fifth paragraph of the collection letter. In this manner, Section 1692e is to be read alongside Section 1692g(b). Section 1692g(b) sets forth that a consumer's written notification within thirty days regarding a debt dispute or request for validation mandates that the collector cease the collection of the debt and cease communications until verification is provided to the consumer.[1] Of

---

[1] Section 1692g(b) sets forth in full:

9

pertinence here, "[a]ny collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor." 15 USC 1692g(b).

The well-established "least sophisticated debtor" standard is applied to determine whether the required validation notice was "overshadowed or contracted" by other messages or notices from the debt collector. Caprio, 709 F.3d at 149 (internal reference omitted.) As recently explained by the Third Circuit Court of Appeals:

> "'The basic purpose of the least-sophisticated [debtor] standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd. This standard is consistent with the norms that courts have traditionally applied in consumer-protection law.'" Lesher, 650 F.3d at 997 (quoting Brown, 464 F.3d at 453) (alteration in original). "As the [Sixth Circuit] explained in [Smith v. Computer Credit, Inc., 167 F.3d 1052 (6th Cir. 1999)], the 'least sophisticated debtor' standard is 'lower than simply examining whether particular language would deceive or mislead a reasonable debtor.'" Wilson, 225 F.3d at 354 (quoting Smith, 167 F.3d at 1054). In other words, "[t]his standard is less demanding than one

---

> Disputed debts. If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this title may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

that inquires whether a particular communication would mislead or deceive a reasonable debtor." Campuzano-Burgos v. Midland Mgmt., Inc., 550 F.3d 294, 298-99 (3d Cir. 2008) (citing Brown, 464 F.3d at 455). Nevertheless, "the standard does not go so far as to provide solace to the willfully blind or non-observant." Id. at 299. The debtor is still held to a quotient of reasonableness, a basic level of understanding, and a willingness to read with care, and the debt collector accordingly cannot be held liable for bizarre or idiosyncratic interpretations. See, e.g., Wilson, 225 F.3d at 354-55. For example, even the "least sophisticated debtor" is expected to read any notice in its entirety. See, e.g., Lesher, 650 F.3d at 997.

As we pointed out in Wilson, the Second Circuit "ruled that a validation notice 'is overshadowing or contradictory if it would make the least sophisticated consumer uncertain as to her rights.'" Wilson, 225 F.3d at 354 (quoting Russell v. Equifax A.R.S., 74 F.3d 30, 35 (2d Cir. 1996)). "The Court of Appeals for the Second Circuit elaborated that a collection letter 'is deceptive when it can be reasonably read to have two or more different meanings, one of which is inaccurate.'" Id. (quoting Russell, 74 F.3d at 35).

[ ]

We specifically concluded in Graziano that "the juxtaposition of two inconsistent statements . . . rendered the statutory notice invalid under section 1692g." Graziano, 950 F.2d at 111. The debt collector's notice "threatened legal action within ten days unless the debt was resolved in that time" and included, at the bottom of the page, "the phrase 'See reverse side for information regarding your legal rights!'" Id. at 109. The required validation notice then appeared on the reverse side of this document. Id. We held that there was "a reasonable probability that the least sophisticated debtor, faced with a demand for payment within ten days and a threat of immediate legal action if payment is not made in that time, would be induced to overlook his statutory right to dispute the debt within thirty days." Id. at 111 (citing Swanson, 869 F.2d at 1225-26). "A notice of rights, when presented in conjunction with such a contradictory demand, is not effectively communicated to the debtor." Id.

Caprio, 709 F.3d at 149-150.

Here, the collection letter first instructs that the debt will be assumed valid unless Mr. Rivera disputes its legitimacy within thirty days. Next, the letter advises Mr. Rivera to notify the

office in writing within thirty days if he believes that any portion of the debt is in dispute, in which case Casale would provide verification of the debt. These paragraphs comprise the statutorily-required validation notice discussed above. The fifth paragraph of the letter is at issue and states: "*Notwithstanding any implications to the contrary, suit may be brought against you within the thirty (30) day period mentioned above for the full amount due, together with interest, court costs and attorneys fees; it should be noted that this matter will not necessarily be held in abeyance during this thirty (30) day period.*" (emphasis added).

It is uncontested that Casale has the right to sue Mr. Rivera within the thirty day period. However, Section 1692g(b) mandates that a suit may not be brought if the consumer disputes the debt and until the debt is verified. The question here is whether the fifth paragraph is false, deceptive, or misleading in that it warns that "[n]otwithstanding any implications to the contrary," an immediate suit may be brought and the matter may not be held in abeyance during the thirty-day window. Casale argues that it simply provided more information beyond that which is statutorily mandated. While this may be true, "[a]ny collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor." 15 USC 1692g(b).

The least sophisticated consumer may be unsure as to the right to dispute the debt when immediate suit is threatened and warning is given that the matter may still proceed within the thirty day window, especially where explanatory language is absent. Mr. Rivera argues that "without transitional language which would ensure that the consumer would not be confused that Casale's right to commence a lawsuit during the initial 30 days does not trump the consumer's right to dispute the debt there is a real potential that a consumer reading the letter would forego

his rights to dispute the debt." (Opp Br. at 20.)  The Court agrees that the language in the fifth paragraph, including the notation that "[n]otwithstanding any implications to the contrary," and the threat of suit and non-abeyance, may mislead the least sophisticated consumer about the right to contest the debt and request validation.  Specifically, the language is unclear that Casale could not and would not sue Mr. Rivera until after the debt is verified in the event that Mr. Rivera timely disputed it and requested its validation.  The letter's language suggests that regardless of Mr. Rivera's actions, a suit may be brought against him within thirty days.  For example, the language implies that even if Mr. Rivera timely disputes the debt, a suit may be brought prior to its validation.  Such an interpretation would be reasonable, and would not be a bizarre or idiosyncratic interpretation of the letter.  The collection letter therefore violates Section 1692g(a)(1) by overshadowing or contradicting Mr. Rivera's right to dispute the debt within thirty days.  Casale attempts to obviate the issue by noting that Mr. Rivera does not plead that he was actually confused or misled by the letter.  However, FDCPA is to be construed broadly to give its full effect, and the remedial statute provides for damages regardless of proof of actual damage.

   3. *The class allegations*

When evaluating a motion to strike allegations of a complaint, the Court must accept as true all factual allegations in the complaint and view all reasonable inferences in the light most favorable to the plaintiff, just as on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  See Andrews v. Cruz, 2005 U.S. Dist. LEXIS 44304, at *6 (D.N.J. June 20, 2005) (internal reference omitted).  As explained above, a motion to strike is viewed with disfavor and will generally "be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issue." Receivables Purchasing

Co., Inc., 2010 U.S. Dist. LEXIS, at *2. "[O]nly allegations that are so unrelated to plaintiffs' claims as to be unworthy of any consideration should be stricken." Johnson v. Anhorn, 334 F.Supp.2d 802, 809 (E.D. Pa. 2004). "'The purpose of a motion to strike is to simplify the pleadings and save time and expense by excising from a plaintiff's complaint any redundant, immaterial, impertinent, or scandalous matter which will not have any possible bearing on the outcome of the litigation.'" Receivables Purchasing Co., Inc., 2010 U.S. Dist. LEXIS, at *2 (quoting Garlanger v. Verbeke, 223 F. Supp. 2d 596, 609 (D.N.J. 2002)).

Fed. R. Civ. P. 23(a) sets forth four prerequisites for class treatment: numerosity, commonality, typicality, and fair and adequate representation. Additionally, one of the types of class actions pursuant to Rule 23(b) must be met. Here, Mr. Rivera pleads that Rule 23(b)(3) supports certification of the putative class. Rule 23(b)(3) instructs that a class action may be maintained if Rule 23(a) is satisfied, and if:

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (A)  the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B)  the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C)  the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D)  the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Here, the proposed class is comprised of:

> a) of all individuals with a New Jersey address who have incurred a consumer debt and had a letter sent to them in substantially the same form as Exhibit A where the letter did not provide the correct balance owed as of the date of the letter, b) was inconsistent with

>and/or overshadowed plaintiff's right to dispute the debt and
>request verification of the debt[,] c) on or after a date one year
>prior to the filing of this action.

(Compl. ¶ 24.)

Casale argues that the Court should strike the class action allegations because it is apparent from the face of the Complaint that Mr. Rivera cannot maintain a class action. Specifically, Casale argues that the class is not ascertainable, that individualized factual issues predominate, and that numerosity has not been established. It is premature for the Court to determine the merits of class treatment here where discovery has not begun and a motion for class certification has yet to be filed. Casale argues that the class is not ascertainable because some individuals may have been sent a form collection letter, and may have also been sent a subsequent communication which provided the actual debt due. While this factual scenario may ultimately affect the class definition and/or size, it is premature for the Court to take this contention into account. For example, it is possible that discovery will reveal that Casale sent out a form letter, but did not send subsequent communications conveying the actual debt within the statutorily-authorized five-day window.

Further, Casale contends that individualized review of state-of-mind and conduct of class members will be necessary, thereby precluding compliance with the Rule 23(b)(3) predominance inquiry regarding common questions of fact. The Court is not persuaded that this argument should be considered upon a motion to strike. The class allegations are related to the controversy, will not prejudice the parties, and will not confuse the issue. See <u>Receivables Purchasing Co., Inc.</u>, supra, 2010 U.S. Dist. LEXIS, at *2. Specifically, the class allegations that other individuals were sent the form collection letter which did not include the amount of debt and which had the same or similar language that overshadowed the right to dispute or validate

the debt is directly related to the controversy which Mr. Rivera takes issue with. This question is best considered upon a petition for class certification once discovery has been conducted and a vetting of the pertinent legal questions is provided.

Last, Casale maintains that a party may not simply allege a number of the purported class size and be done with it, and that something more than speculative allegations is required to demonstrate numerosity. While this is certainly true upon consideration of a petition for class treatment, it is premature for the Court to consider whether the numerosity requirement is met when discovery has yet to begin.

### III. CONCLUSION

For the foregoing reasons, Casale's joined motions to dismiss the FDCPA claims and to strike the class action allegations are denied. The Court will enter an order implementing this opinion.

/s/ Dickinson R. Debevoise
**DICKINSON R. DEBEVOISE, U.S.S.D.J.**

**Date:** June 9, 2014